IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JOHN CLARK**                                                             **PLAINTIFF**

**V.**                          **CIVIL ACTION NO. 3:13CV921 HTW-LRA**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**        **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

John Clark appeals the final decision denying his application for Disability Insurance Benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed for the reasons that follow.

**Factual and Procedural Background**

On March 25, 2011, Clark filed a Title II application alleging he became disabled on March 19, 2011, due to pain in his neck, back, right shoulder, right hand, and knees. He was 50 years old at the time of filing, and has a high school education, with two years of vocational college, and past work experience as a slot/pit technician, chair-framer, laborer, maintenance-mechanic, and clean-up worker. The application was denied initially and on reconsideration. Clark appealed the denial and on July 13, 2012, Administrative Law Judge Douglas Gilmer ("ALJ") rendered an unfavorable decision

finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council subsequently denied Clark's request for review, and he now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's "status post cervical spine surgery (circa 2005) with cervical disc disease, status post right shoulder rotator cuff repair surgery (circa 2005), status post right carpel tunnel release (2010), lumbar degenerative disc disease, mild obesity, and hypertension" were medically severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except he should not climb ladders, ropes or scaffolds and only occasionally climb stairs. Based on vocational expert testimony at step five, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a cleaner, poultry-worker, and fast-food worker.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to apply the correct severity standard at step two, and failed to assign controlling weight to his treating physician's medical source statement. The Court rejects these arguments on the grounds set forth below.

In *Stone v. Heckler,* the Fifth Circuit confirmed the following to be the proper legal standard for determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such

3

minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). The *Stone* Court cautioned that it would "in the future assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used." *Id*. at 1106.  In evaluating the severity of Plaintiff's impairments here, the ALJ explained that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."[2]  Plaintiff maintains that this was error because an impairment causing any interference with a clamant's work ability, even minimal interference, is a severe impairment under *Stone*.

Since *Stone*, the Fifth Circuit has cautioned that the critical issue is whether the ALJ applied the slight abnormality standard, not whether he or she recited  "magic words." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).[3]  More importantly,

---

[2]ECF No. 9, p. 19.

[3]More recently, the Fifth Circuit has held that "an impairment it is not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson v. Astrue*, 387 F.App'x 459, 461

Plaintiff bears the burden of establishing a severe impairment at step two, and he has failed to identify any impairment that the ALJ failed to find severe on appeal. As noted above, the ALJ found that Plaintiff had several severe impairments. Although Clark correctly notes that the ALJ failed to cite *Stone* in his opinion, the failure to cite *Stone* or track its precise language does not mandate reversal or remand. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987). *"Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, **without consideration of the remaining steps in the sequential analysis**, claims of those whose impairment is more than a slight abnormality." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (quoting *Anthony*, 954 F.2d at 294) (emphasis added). Plaintiff's claims were not summarily dismissed at step two here. In compliance with controlling law, the ALJ proceeded with the sequential evaluation, and substantial evidence supports his overall finding that none of Plaintiff's impairments, alone or in combination, would preclude him from performing light work subject to the limitations of his residual functional capacity.

As his second point of error, Plaintiff alleges that the ALJ erred in failing to assign controlling weight to the medical source statement of his treating physician, Dr. Augustus

---

(5th Cir. 2010) (unpublished decision) (per curiam). To that end, the Court found that the ALJ applied the proper legal standard of *Stone v. Heckler* in determining that the claimant's back pain "did not impose more than a minimal effect on his ability to engage in basic work-related activities during the relevant time period." *Id.* at 461. Although Plaintiff correctly notes that *Brunson* is an unpublished opinion, he does not cite any Fifth Circuit authority which adopts the strict and narrow construction of *Stone* that he contends.

Soriano. Specifically, he asserts that the ALJ failed to expressly indicate the weight that he assigned to Dr. Soriano's opinion, and failed to perform the statutory analysis outlined in 20 C.F.R. § 404.1527(d).

The Fifth Circuit has long held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). The statutory analysis requires the ALJ to consider the length of treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; the consistency of his opinion with the record as a whole; and the specialization of the physician. *Id*. But as noted, an ALJ is required to perform the statutory analysis only when the ALJ "rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). The ALJ is free to reject any opinion, in whole or in part, when good cause is shown, i.e., when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). An ALJ need not consider each of the § 404.1527(d) factors where "there is competing first-hand medical evidence and the ALJ finds as a

6

factual matter that one doctor's opinion is more well-founded than another." *Walker v. Barnhart*, 158 Fed.App'x. 534 (5th Cir. 2005) (citing *Newton* 209 F.3d at 458). The ALJ was presented with competing first-hand medical evidence to support his assessment of Dr. Soriano's medical source statement in this case.

While medical records establish that Dr. Soriano was Plaintiff's treating physician, they show that he was only seen by Dr. Soriano from February 2011 though April 2012, primarily for check-ups and prescription refills. No comprehensive physical examination, objective laboratory or diagnostic tests, or clinical findings are reflected in his treatment records during that time period. Yet, in a medical source statement submitted in August 2011, Dr. Soriano opined that based on Plaintiff's hypertension, GERD, status post-rotator cuff tear of the right shoulder, status post-cervical fusion CS-C4, and status post-carpel tunnel release, Plaintiff had environmental and manipulative limitations, and could not sit/stand/or walk for more than three hours or lift and carry more than 10 pounds. He also opined that Plaintiff would need to alternate positions every 30 minutes; lie down at unpredictable intervals; and, would miss work three times per month because of his impairments, effectively limiting Plaintiff to less than sedentary work.[4]

As observed by the ALJ, Dr. Soriano's assessment is inconsistent with Plaintiff's subsequent treatment records from Rush Pain Clinic in October 2011 and April 2012, "showing the claimant's condition to be well managed on conservative therapy with no

---

[4]ECF No. 9, pp. 268-272, 304-308, 338-341.

significant objective medical abnormalities on examination." In April 2012, Plaintiff reported to Rush Pain Clinic chiefly complaining of pain in his right arm and shoulder that intensified with movement, but was relieved with medication. During the examination, Plaintiff advised that his pain remained unchanged since his previous visit six months earlier, in October 2011. He explained that he was not only "doing great," but his current treatment regimen was "continuing to work well" and he deferred any changes to his treatment regimen. Additionally, his clinical examinations revealed no gastrointestinal, musculoskeletal, or neurological abnormalities. He also ambulated without the use of an assistive device, had normal neck extension and rotation, no weakness in either his upper or lower extremities, and normal range of motion in his lumbar spine. No complaints of knee, back, or hand pain are documented, and his upper-arm pain was noted to be controlled.[5]

    Dr. Soriano's medical source statement is also inconsistent with the opinions of state agency physicians, Dr. Thomas Jeffcoat and Dr. Robert Culpepper, who opined that Plaintiff retained the residual functional capacity to perform light work. In July 2011, Dr. Jeffcoat opined that Plaintiff could frequently lift up to 10 pounds per day, and could sit, stand, or walk for 6 hours per day, with no postural, manipulative, or environmental limitations. In support, Dr. Jeffcoat noted that these limitations were consistent with medical evidence indicating that Plaintiff's lumbar spondylosis was "apparently doing

---

[5]ECF No. 9, pp. 342-356.

well" given the lack of recent treatment. He also cited treatment records from Dr. David Pomierski indicating that Plaintiff was healing well from his carpel tunnel release in 2010, because he had a normal range of motion and sensory function in his hand; had been discharged from treatment; and, had been informed that he could return to work. Medical records from Dr. Leland Lou covering Plaintiff's pain management for neck and right-arm/hand pain from June 2009 through August 2011, also confirm that his right-hand complaints diminished following his carpel tunnel release in 2010. His musculoskeletal examinations were also negative for muscle pain, joint pain, joint swelling and deformity. Based on this medical evidence, Dr. Jeffcoat concluded, and Dr. Culpepper later affirmed, that Plaintiff could perform light work. The ALJ, in turn, assigned their assessments significant weight. In doing so, the ALJ explained that "while Dr. Soriano provides a somewhat more limited assessment . . . , such assessment is inconsistent with the subsequent treatment records from the Rush Pain Clinic showing the claimant's condition to be well managed on conservative therapy with no significant objective medical abnormalities on examination."[6]

Thus, while not expressly stated, it is clear from the ALJ's analyis that he gave Dr. Soriano's opinion little weight because it was not supported by his own clinical findings and was inconsistent with competing first-hand medical evidence. By contrast, although not an examining physician, Dr. Jeffcoat's findings were supported by the clinical

---

[6] ECF No. 9, pp. 23, 259-266, 273-280, 281-296, 303.

findings of Plaintiff's other treating physicians, Drs. Lou and Pomierski, as well as the records from Rush Pain Clinic post-dating Dr. Soriano's assessment.  Plaintiff's contention that Dr. Soriano's opinion should nevertheless prevail because he is a treating physician is without merit.  "[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott,* 770 F.2d at 485.  However, Plaintiff does not cite, nor does the Court find, any authority requiring an ALJ to give less weight to a substantially supported non-examining physician's opinion simply because it contradicts a treating physician's assessment, particularly when that assessment is conclusory and lacks evidentiary support.

Plaintiff argues that the ALJ should not have assigned significant weight to the state agency physicians' opinions because their assessments failed to take into account medical evidence generated after August 23, 2011, which is after they submitted their opinions.  There is no explanation as to how this medical evidence, which was before the ALJ, would have changed the result.  The evidence in question reflects that Plaintiff received emergency room treatment for excessive potassium levels and allergic reactions to poison oak, and chiropractic treatment on an "as needed basis" for back pain.  The evidence also includes Dr. Soriano's treatment notes for check-ups and prescription refills, and progress notes from Rush Pain Clinic indicating that Plaintiff was "doing

great" and had normal range of motion in his lumbar spine.[7]

Given the evidence as stated, the ALJ reasonably concluded that contrary to Dr. Soriano's medical source statement, Plaintiff could perform light work subject to the climbing limitations of his residual functional capacity. In making this determination, the ALJ found that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of his impairments were not entirely credible. When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's credibility findings are entitled to considerable deference here.

Plaintiff testified that he experiences constant unremitting pain in his neck, hands, and knee everyday. He admitted that the carpal tunnel surgery in 2010 provided relief, but testified that the pain had returned and he now experiences it in both hands, though he later acknowledged that medication and a topical ointment helped to relieve the pain. He also testified that he experiences back and knee pain, which requires him to use a cane and makes it difficult to climb stairs, but he agreed that his right shoulder and neck pain are his primary problems. On a good day, he testified that he can walk 100 yards, but explained that he can only walk ten yards on a bad day, and cannot stand or sit for long periods of time. Despite these limitations, Plaintiff acknowledged that he can attend to

---

[7]ECF No. 9, pp. 304-364.

his personal grooming needs; occasionally drives and shops; and, is able to cook for himself and perform household chores.[8]

As observed by the ALJ, the medical evidence conflicted with Plaintiff's claim that he was experiencing the "extremely serious and debilitating symptoms he testified to at the hearing." Although Plaintiff testified that he uses a cane, he acknowledged that it had not been prescribed by a physician, and he had only been using it for a couple of months. The evidence of record also failed to substantiate his knee complaints to the degree alleged. No knee complaints or abnormalities are reflected in his treatment with Rush Pain Clinic. On the contrary, the objective evidence established that Plaintiff underwent surgeries on his cervical spine and right rotator cuff between 2004 and 2005, and had carpel tunnel surgery on his right hand in 2010, all with success. In May 2008, post-surgical MRI results reflected some cervical spondylosis and only minimal stenosis with mild disc-bulging in his cervical spine. And, although Plaintiff testified that his recurring hand-pain makes it difficult to use his hand, he acknowledged that he could hold a pen, open a jar, drive, attend to his personal needs, and perform household chores.[9]

Plaintiff does not dispute this evidence or the ALJ's analysis on appeal. He maintains simply that his own testimony and subjective complaints support a finding of greater functional limitations than those assigned by the ALJ. The mere fact that working

---

[8] ECF No. 9, pp. 62-87.

[9] *Id*. at 250-252.

may cause Plaintiff pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that he can work despite being in pain or discomfort, as it does here.  *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).  The ALJ's finding that Plaintiff could perform light work subject to the climbing limitations of his residual functional capacity, is substantially supported by the assessments of Drs. Jeffcoat and Culpepper, the objective medical evidence, and Plaintiff's own testimony.

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 8th day of July 2014.

                                            /s/  Linda R. Anderson
                          UNITED STATES MAGISTRATE JUDGE